In this accelerated calendar case, appellant, William L. Heckathorn, Sr., appeals his conviction entered by the Warren Municipal Court on a charge of menacing in violation of Section 537.06 of the Codified Ordinances for the City of Warren. Appellee, the City of Warren, has not filed an appellate brief and is otherwise not participating in this appeal. For the reasons that follow, we affirm the judgment of the trial court.
The facts pertinent to this appeal are as follows. On July 10, 1998, Johnny E. Hamm ("Hamm"), an officer with the Cleveland Police Department, filed a complaint alleging that, on or about June 29, 1998, appellant knowingly caused him to believe that appellant would bring about physical harm to him in violation of Warren Municipal Ordinance Section 537.06, menacing, a misdemeanor of the fourth degree. It is apparent from the record that the alleged offense occurred during the early stages of divorce proceedings between appellant and his wife, Diane Heckathorn. On the date of the alleged incident, appellant observed Hamm visiting Ms. Heckathorn at her residence. To the above charge, appellant entered a plea of not guilty and a trial before the bench was held on August 20, 1998. Two witnesses presented testimony at trial: appellant and the alleged victim, Hamm.
At trial, Hamm testified that on June 29, 1998 he visited with Ms. Heckathorn who was then staying at her mother's home in Warren, Ohio. At approximately 7:00 that evening, appellant walked into Ms. Heckathorn's residence unannounced and was told by his wife to leave the premises immediately. When appellant refused, Ms. Heckathorn contacted the police. Appellant decided to leave the premises but not before informing Hamm that he would "kick [Hamm's] ass," a statement that Hamm believed as expressing appellant's desire to cause him physical harm. Although appellant did not move toward Hamm, he was described as positioning himself in a "fighting stance" as the threat was made.
Later that evening, appellant telephoned the home where Hamm was visiting with Ms. Heckathorn. Hamm testified that he talked with appellant in "civil terms" and that appellant requested some articles of clothing that his son would need during a weekend visit. As appellant was acting "civil" with him, Hamm decided that he and Ms. Heckathorn would drop off some of the child's clothing at appellant's home. However, as they approached appellant's residence at approximately 9:00 that same evening, Hamm saw appellant run off the porch to his home gripping a baseball bat in a threatening manner. At some point during one of these incidents, appellant was alleged to have informed Hamm that he would run Hamm out of town like he did with his wife's other man. Hamm and Ms. Heckathorn drove away from appellant's home and subsequently contacted the police.
On cross-examination, Hamm testified that he was a police officer who currently lives in Cleveland with his girlfriend, Ms. Heckathorn, and the Heckathorn's minor child. He acknowledged that there was no physical contact between him and appellant on the night of June 29, 1998. Hamm further acknowledged that through his training as a police officer, he had prior experience with persons who directed threats toward him.
Appellant, who took the stand in his own defense, did not deny that he entered his wife's residence the night of June 29, 1998. However, appellant alleged that he made prior arrangements with his wife to pick up some clothing for his son and just walked into her home as was his past practice.
When appellant entered his wife's residence, he saw Hamm who was trying to "egg him on" and was smiling at him. Appellant testified that he never stated that he was going to "kick [Hamm's] ass." Rather, appellant merely informed Hamm to "wipe the smile off his face or [appellant] was going to rip it off him." He denied making any threatening gestures toward Hamm and left his wife's house without incident.
Later that evening, appellant called his wife to express the need for some clothing for their son. Ms. Heckathorn stated that she would have Hamm drop off some clothing and appellant responded that he "[didn't] want [Hamm] around [his] property." Appellant explained that he was in the middle of divorce proceedings with his wife and that Hamm had started a relationship with Ms. Heckathorn three weeks prior to these incidents. While appellant expressed his displeasure with Hamm's actions with his wife, he testified that he never intended to cause physical harm toward Hamm.
At approximately 8:15 that same evening, appellant saw Hamm and his wife drive past his residence. Appellant stated that he saw Hamm pointing an unidentified object at him. As he walked toward the car, Ms. Heckathorn threw some clothing out the window and then took off "screeching" the tires of their automobile. Appellant denied that he had anything in his hands as he approached the vehicle, but acknowledged that a bat was located on the porch to his home because he and his son were playing baseball that night.
Following the conclusion of the evidence presented at trial, the lower court found appellant guilty of the charge found in the complaint and he was sentenced accordingly. From this judgment, appellant filed a timely notice of appeal and now asserts the following two assignments of error:
 "[1.] THE TRIAL COURT ERRED IN FINDING BEYOND A REASONABLE DOUBT THAT [APPELLANT] KNOWINGLY CAUSED ANOTHER TO BELIEVE THAT [APPELLANT] WOULD CAUSE HIM PHYSICAL HARM.
 "[2.] THE TRIAL COURT ERRED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN CONVICTING [APPELLANT] OF MENACING."
Before addressing appellant's assignments of error, we note that appellee has failed to file an appellate brief in this matter. The failure to file an appellate brief can result in a decision by this court to accept appellant's statement of facts and issues as correct and reverse the trial court's judgment if appellant's brief would reasonably support such an action. See App.R. 18(C). The record before this court, including appellant's brief, does not support such a reversal. However, we warn the City of Warren that a decision not to file an appellate brief is a decision made at its own peril and may very well lead in the future to the reversal of an appeal upon a record that does not clearly support an accused's conviction such as exists in the case sub judice.
In the first assignment of error, appellant claims that the trial court's judgment is not supported by sufficient evidence. In this case, appellant was charged with menacing under a municipal ordinance identical to its Ohio Revised Code counterpart, R.C.2903.22, that states as follows:
 "(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of such other person, such other person's unborn, or a member of the other person's immediate family."
In this case, there is no dispute that appellant directed a threat toward Hamm, regardless of the conflicting testimony as to which body part appellant threatened to either "kick" or "rip off." However, appellant claims that he never intended to act on his threat and that Hamm turned the other cheek from his comments. Appellant further questions the credibility of Hamm's trial testimony that he believed appellant would cause him harm. Appellant claims that Hamm, a seasoned officer with the Cleveland Police Department, did not fear harm from him as evidenced by Hamm's decision to drive past his house after the threat was made.
It is well established that an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of an accused's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense proven beyond a reasonable doubt. Id.
The record before this court contains Hamm's testimony that he believed that appellant intended to cause him physical harm as a result of the threat directed at him. This testimony, if believed, is sufficient to sustain appellant's conviction for menacing. While appellant questions the credibility of Hamm's testimony, these questions are appropriate in a manifest weight challenge, not a sufficiency argument. Appellant's first assignment of error is without merit.
In the second assignment of error, appellant contends that his conviction for menacing is against the manifest weight of the evidence. We disagree.
In State v. Schlee (Dec. 23, 1994), Lake App. No 93-L-082, unreported, this court distinguished between "sufficiency of the evidence" challenges and "manifest weight" challenges. In defining "manifest weight" challenges we stated:
 "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "* * *[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * "`(Citations omitted.) (Emphasis added.) [State v.] Davis [1988], 49 Ohio App.3d [109], 113." Id. at 11. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
It is the well established law in Ohio that the weight to be given evidence and the credibility of witnesses are primary for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v. Loza (1994), 71 Ohio St.3d 61,69.
In the case sub judice, appellant argues that Hamm's testimony was not credible as to the issue of whether Hamm feared physical harm as a result of his comments. Without repeating our recitation of the evidence presented in the record, it is quite clear that there was a high level of tension between appellant and Hamm when appellant entered Ms. Heckathorn's residence and saw Hamm visiting with his wife. At trial, appellant expressed his displeasure regarding the underlying divorce proceedings with his wife and it is quite clear that appellant's comments toward Hamm were not meant as idle chatter. Hamm testified that he took appellant's statements as a threat and believed that appellant intended to cause him physical harm. The trial court obviously believed this testimony and, under the circumstances, there is no reason to disturb this finding.
From the evidence presented at trial, including all the reasonable inferences, we cannot conclude that the trier of fact clearly lost its way and created such a manifest miscarriage of justice to warrant a reversal of appellant's conviction. Appellant's second assignment of error is without merit.
Based on the foregoing, the judgment of the trial court is affirmed.
 _________________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., O'NEILL, J., (Joseph), Ret., Seventh Appellate District, sitting by assignment, concur.